**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOHN JOHNSON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. _____** |
| **CITY OF NEW ORLEANS,** | **SECTION** |
| **HELENA MORENO, IN HER OFFICIAL** | |
| **CAPACITY AS MAYOR OF THE** | **JUDGE** |
| **CITY OF NEW ORLEANS,** | |
| **THE NEW ORLEANS CITY COUNCIL, AND** | **MAG.** |
| **THE ORLEANS PARISH SCHOOL BOARD** | |
| **MEMBERS IN THEIR OFFICIAL CAPACITIES** | |

**FILED: _____**    **_____**

**DEPUTY CLERK**

**<u>COMPLAINT FOR DECLARATORY, INJUNCTIVE,
AND MONETARY RELIEF UNDER 42 U.S.C. §1983</u>**

NOW INTO COURT, through undersigned counsel, come Plaintiffs, JOHN JOHNSON, ET AL. ("Plaintiffs"), who respectfully file this Complaint for violations of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. §1983 against Defendants, the CITY OF NEW ORLEANS ("City"), HELENA MORENO, in her official capacity as Mayor of the City of New Orleans, the NEW ORLEANS CITY COUNCIL ("Council"), and the ORLEANS PARISH SCHOOL BOARD ("OPSB") and members of the OPSB in their official capacities aver as follows:

## I.    INTRODUCTION

1.

This litigation concerns the unconstitutional selective prioritization and payment of governmental financial obligations by the City of New Orleans and the Orleans Parish School Board while longstanding final judgments owed to Plaintiffs remain unpaid.

2.

Plaintiffs are holders of longstanding final money judgments arising from the Agriculture Street Landfill litigation and related proceedings involving governmental development upon contaminated property. *(Exhibit 1, 2006 Original Judgment and Reasons for Judgment; Exhibit 2, 2013 Flight 1 Damages Trial Judgment; Exhibit 3, 2017 Moton School Judgment against OPSB; Exhibit 4, March 14, 2022 Judgment and Reasons; against OPSB); Exhibit 5, June 10, 2022 Final Corrected Judgment re Moton);*

3.

The judgments against the City and OPSB constitute final adjudicated judicial obligations.

4.

Upon information and belief, Defendants are selectively prioritizing politically significant obligations while subordinating substantially older final judgments.

5.

Despite the existence of these longstanding unpaid judgments, Defendants are now proceeding toward substantial settlement payments, financial commitments, and intergovernmental arrangements involving OPSB while earlier judgment creditors remain unpaid. Recent public reporting indicates that the contemplated OPSB arrangement may involve

extremely large public financial commitments, including substantial upfront payment obligations and long-term financial exposure. Media outlets report that the proposed structure reportedly includes that "the city will refund some of the fees it previously collected by paying the school board **$6 million this year**; an upfront payment component of approximately $2 million in 2027 and an additional $6 million by the end of 2027, along with broader continuing obligations. At the same time, numerous earlier judgment creditors remain unpaid years after obtaining final judicial relief. This raises serious constitutional concerns under federal law and substantial ethical concerns under the Louisiana Rules of Professional Conduct.

6

In *McMahon v. City of New Orleans*, 280 So.3d 796 (La. App. 4 Cir. 2019), the Louisiana Fourth Circuit affirmed a judgment ordering the City to refund approximately $25.6 million in unlawfully collected Automated Traffic Enforcement System ("ATES") fines, together with judicial interest. The Fourth Circuit specifically held that the underlying ordinance authorizing those collections was null and void *ab initio* — meaning legally void from inception and treated as though it had never existed. As a consequence, the City was ordered to return funds it had no lawful authority to collect. The *McMahon* judgment is not hypothetical, contingent, or politically optional. It is a final adjudicated monetary obligation arising from unlawful governmental conduct. Yet despite the finality of that judgment, affected plaintiffs have remained unpaid while the City now contemplates entering into new and politically significant financial commitments.

7.

The constitutional and ethical concerns are amplified by the Agriculture Street Landfill litigation, including *Johnson v. Orleans Parish School Board* and related proceedings involving

Gordon Plaza and surrounding neighborhoods. As reflected in public reporting, residents obtained a judgment exceeding $75 million arising from governmental decisions to construct homes and schools atop contaminated landfill property. The litigation involved findings that the City, OPSB, and other governmental entities bore responsibility for development on contaminated land. The reporting further describes decades of delay, displacement, contamination exposure, and prolonged hardship endured by residents. Critically, the reporting also acknowledges the City's longstanding pattern of delayed judgment payment practices, noting that the City historically maintained hundreds of outstanding judgments and settlements, some dating back decades. Like *McMahon*, the *Johnson* litigation involves final adjudications imposing substantial governmental monetary obligations. The City and OPSB therefore face a circumstance in which older judgment creditors remain unpaid while politically favored or strategically prioritized obligations appear positioned for accelerated treatment.

8.

The federal decision in *Davis v. Cantrell*, CIVIL ACTION NO. 18-231 SECTION: "E"(1) (E.D. La. Nov 26, 2018) provides a direct constitutional framework governing selective municipal payment practices. In *Davis*, the plaintiff alleged that although the City maintained a stated policy of paying judgments in chronological order, the City nevertheless paid later-issued judgments before earlier ones without a rational basis. Judge Susie Morgan held that: While courts cannot compel appropriation of municipal funds under Louisiana Constitution Article XII, §10(C), A municipality's selective payment practices remain subject to federal constitutional scrutiny. Most importantly, the court sustained an Equal Protection "class-of-one" claim under 42 U.S.C. §1983 where a judgment creditor plausibly alleged: 1) He was similarly situated to other judgment creditors; 2) He was treated differently; and 3) There was no rational basis for the

disparate treatment. The court expressly emphasized that: "The injury in fact in an equal protection case is the denial of equal treatment itself." The court further rejected the notion that municipalities possess unfettered discretion to pay judgments in any order whatsoever. Instead, arbitrary deviation from stated payment practices may constitute actionable unconstitutional discrimination. That reasoning applies with particular force here. If the City proceeds with substantial OPSB settlement payments while earlier final judgments such as *McMahon* and *Johnson* remain unpaid, serious questions arise concerning: 1) Whether similarly situated judgment creditors are being treated differently; 2) Whether neutral chronological payment practices are being abandoned; 3) Whether political, institutional, or external pressure is driving payment prioritization; and 4) Whether any rational basis exists for subordinating earlier final judgments. Such conduct may expose the City and the OPSB and responsible officials to additional federal constitutional litigation under §1983. *(Exhibit 6, Davis v. Cantrell)*

9.

Attorneys representing unpaid judgment creditors, including counsel associated with the *McMahon* and *Johnson* matters, possess significant professional obligations under the Louisiana Rules of Professional Conduct. Under Louisiana Rules 1.1, 1.3, and 1.4, attorneys must act competently, diligently, and communicatively to protect client interests and advise clients regarding developments materially affecting their rights. These duties necessarily include: 1) Informing clients of any proposed out-of-order municipal payment conduct; 2) Evaluating whether clients are being subjected to unconstitutional disparate treatment; 3) Considering available remedies to preserve priority rights; and 4) Advising clients concerning potential federal Equal Protection claims under *Davis v. Cantrell*. Failure to address or communicate such developments may expose counsel to allegations of inadequate diligence or failure to protect

client interests. Hence, the filing of this federal lawsuit as a step to address this issue in a court of law on behalf of the Johnson Unpaid Judgment Creditors.

10.

The Louisiana Rules likewise impose serious obligations upon attorneys representing the City, OPSB, and related governmental entities. Louisiana Rules 1.2(d), 1.13(b), 2.1, and 8.4 require government attorneys to provide candid legal advice and refrain from assisting conduct they know to be unlawful or unconstitutional. Government lawyers do not merely function as political facilitators. They serve institutional and public-law obligations. Those duties include: 1) Advising municipal officials regarding constitutional risks associated with selective payment practices; 2) Warning against actions that may expose the City to Equal Protection liability; 3) Avoiding participation in arbitrary or discriminatory payment schemes; and 3) Taking appropriate internal action where officials seek to proceed despite known constitutional concerns. These responsibilities become especially acute where officials may seek to prioritize politically significant settlements while older judicial obligations remain outstanding.

11.

The issue presented extends beyond accounting priorities. When residents who prevailed in court years ago remain unpaid while new politically important obligations move to the front of the line, the resulting public perception is that judicial rights depend not on law, but on political leverage and institutional influence. That concern is particularly severe where the unpaid creditors include: 1) Individuals subjected to unlawful municipal fine collection; and 2) Residents harmed through exposure to contaminated public development sites. The integrity of the judicial system depends upon the principle that final judgments are not merely symbolic pronouncements, but enforceable obligations entitled to equal dignity and lawful treatment.

12.

Accordingly, the undersigned calls upon the City and associated officials to publicly disclose: 1) The policy governing the order of payment of municipal judgments and settlements; 2) Whether the contemplated OPSB settlement will deviate from that policy; 3) The legal and constitutional basis for any deviation; 4) The projected impact of OPSB settlement payments on earlier unpaid judgment creditors; and 5) Whether the City Attorney's Office has formally analyzed the constitutional implications identified in *Davis v. Cantrell*. The public and affected judgment creditors are entitled to transparency before irreversible financial commitments are made.

13.

Plaintiffs do not seek to compel legislative appropriations in violation of Louisiana Constitution Article XII, §10(C).

14

Rather, Plaintiffs challenge the unconstitutional arbitrary and irrational manner in which Defendants selectively prioritize governmental obligations and payments.

15.

Defendants' conduct violates the Equal Protection Clause of the Fourteenth Amendment and gives rise to relief under 42 U.S.C. §1983.

## II.    JURISDICTION AND VENUE

16.

This Court possesses jurisdiction pursuant to: 28 U.S.C. §1331; 28 U.S.C. §1343; 28 U.S.C. §§2201 and 2202; and 42 U.S.C. §1983.

17.

Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. §1391 because the acts complained of occurred in this District.

## III.   PARTIES

18.

Plaintiffs JOHN JOHNSON, ET AL. are judgment creditors holding longstanding final judgments arising from the Agriculture Street Landfill litigation.

19.

Defendant CITY OF NEW ORLEANS is a political subdivision of the State of Louisiana.

20.

Defendant ORLEANS PARISH SCHOOL BOARD ("OPSB") is a political subdivision of the State of Louisiana and a judgment debtor to Plaintiffs.

21.

Defendant HELENA MORENO is Mayor of the City of New Orleans and is sued solely in her official capacity.

22.

The members of the Orleans Parish School Board are sued solely in their official capacities as governing officials responsible for OPSB financial policies, settlement structures, and payment prioritization practices.

## IV.    FACTUAL ALLEGATIONS

### A.    Plaintiffs Hold Longstanding Final Judgments Against Defendants

23.

Plaintiffs obtained final judgments against the City of New Orleans, OPSB, and related governmental entities arising from governmental conduct associated with the Agriculture Street Landfill and Gordon Plaza development.

24.

The judgments constitute longstanding final judicial obligations.

25.

Numerous Plaintiffs have remained unpaid for years and, in some cases, decades.

26.

Certain class representatives and elderly Plaintiffs have died awaiting payment.

27.

OPSB itself remains a judgment debtor to Plaintiffs and has failed to satisfy substantial portions of the judgments owed.

### B.    Defendants Are Proceeding Toward New Financial Commitments While Earlier Judgments Remain Unpaid

28.

Recent public reporting reflects that the City and OPSB are considering substantial intergovernmental settlement structures and financial commitments involving millions of dollars in public funds.

29.

The contemplated arrangements reportedly include immediate and future payment obligations.

30.

Upon information and belief, Defendants intend to prioritize these obligations despite the continued nonpayment of substantially older final judgments owed to Plaintiffs.

31.

Defendants have failed to establish or disclose any constitutionally neutral rationale for such selective prioritization.

C.   *Davis v. Cantrell* **Recognizes Constitutional Constraints on Arbitrary Selective Payment Practices**

32.

In *Davis v. Cantrell*, CIVIL ACTION NO. 18-231 SECTION "E" (1) (E.D. La. Nov. 26, 2018), the United States District Court for the Eastern District of Louisiana held that although Louisiana law limits judicial authority to compel appropriations, municipalities remain subject to constitutional scrutiny regarding arbitrary judgment payment practices.

33.

The Court recognized that judgment creditors may assert Equal Protection "class-of-one" claims where: a) similarly situated creditors are treated differently; and b) no rational basis exists for the disparate treatment.

34.

The *Davis* Court specifically recognized that: "The injury in fact in an equal protection case is the denial of equal treatment itself."

35.

Defendants' conduct falls squarely within the constitutional framework recognized in Davis.

**D.      Defendants Lack a Rational Basis for the Disparate Treatment**

36.

Plaintiffs are similarly situated to other governmental creditors and claimants whose obligations Defendants seek to prioritize.

37.

Defendants are selectively accelerating politically significant obligations while longstanding judgment creditors remain unpaid.

38.

Defendants lack a rational basis for such disparate treatment.

39.

Upon information and belief, the selective prioritization is arbitrary, irrational, politically motivated, and inconsistent with principles of equal governmental treatment.

40.

Defendants' conduct undermines public confidence in the judicial system and the integrity of governmental financial practices.

**V.      CAUSE OF ACTION**

**VIOLATION OF EQUAL PROTECTION - 42 U.S.C. §1983**

41.

Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

42.

The Equal Protection Clause protects against arbitrary and irrational governmental discrimination.

43.

Defendants intentionally treated Plaintiffs differently from similarly situated creditors and claimants.

44.

Defendants selectively prioritized other obligations and settlements while leaving Plaintiffs' longstanding judgments unpaid.

45.

Defendants lacked a rational basis for the disparate treatment.

46.

Defendants' conduct constitutes arbitrary governmental action prohibited by the Fourteenth Amendment.

47.

As a direct result, Plaintiffs suffered:

a.  denial of equal treatment;

b.  deprivation of constitutional rights;

c.  delay damages;

d.  additional financial harm;

e.  emotional distress associated with decades of nonpayment.

48.

Defendants are liable pursuant to 42 U.S.C. §1983.

## VI.    REQUEST FOR DECLARATORY RELIEF

49.

An actual controversy exists concerning the constitutionality of Defendants' selective payment practices.

50.

Plaintiffs seek a declaration that Defendants may not arbitrarily prioritize governmental obligations without a rational basis while similarly situated judgment creditors remain unpaid.

## VII.    REQUEST FOR INJUNCTIVE RELIEF

51.

Absent injunctive relief, Plaintiffs will continue to suffer constitutional injury.

52.

Plaintiffs seek narrowly tailored preliminary and permanent injunctive relief prohibiting arbitrary selective payment practices that violate Equal Protection principles.

53.

Plaintiffs further seek transparency regarding:

- payment prioritization policies;

- settlement prioritization criteria;

- judgment payment procedures; and

- governmental financial allocation practices.

## VIII.    PRAYER FOR RELIEF

The City of New Orleans and the Orleans Parish School Board now stand at the intersection of: 1) Final judicial obligations; 2) Large proposed new settlement commitments; Federal constitutional constraints; and 3) Professional ethical duties imposed upon counsel.

Any decision to prioritize settlements among the judgment debtors (City and OPSB) via settlement payments while earlier final judgments remain unpaid risks substantial constitutional exposure under *Davis v. Cantrell*, further litigation under 42 U.S.C. §1983, and serious questions concerning compliance with the Louisiana Rules of Professional Conduct. The rule of law requires more than selective enforcement of judicial obligations. It requires that government honor final judgments fairly, rationally, transparently, and constitutionally.

WHEREFORE, Plaintiffs respectfully pray that after due proceedings are had there be judgment in their favor and against Defendants as follows:

1. Declaring Defendants' selective payment practices unconstitutional;

2. Issuing preliminary and permanent injunctive relief prohibiting arbitrary discriminatory payment practices;

3. Awarding compensatory damages pursuant to 42 U.S.C. §1983;

4. Awarding attorneys' fees and costs pursuant to 42 U.S.C. §1988;

5. Awarding declaratory and equitable relief;

6. Granting all further relief as justice requires.

## JURY DEMAND

Plaintiffs request trial by jury on all issues triable by jury.

Respectfully submitted,

*/s/ Suzette P. Bagneris*
Suzette P. Bagneris (LSBA No. 22241)
THE BAGNERIS FIRM, LLC
1929 Jackson Avenue
New Orleans, Louisiana 70113
Telephone: (504) 810-3995
Facsimile: (504) 336-2198
Email: sbagneris@bagnerislawfirm.com

*Lead Counsel, Johnson Plaintiffs*

*/s/ Linda S. Harang*
Linda S. Harang
601 Poydras Street, Floor 24
New Orleans, Louisiana 70130
Telephone: 526-1086
Facsimile: (504) 324-0778
Email: lharang@morrisbart.com
*Liaison Counsel, Johnson Plaintiffs*

*/s/ Joseph M. Bruno*
Joseph M. Bruno (LSBA No. 03604)
BRUNO & BRUNO
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 581-1493
Email: jbruno@brunobrunolaw.com
*Johnson Class Counsel*

*/s/ George J. G. Roux*
George J. G. Roux
*823 Saint Louis Street*
*New Orleans, Louisiana 70112*
*Telephone: (504) 522-0155*
*Facsimile: (504) 522-3819*
*Email: gjgroux@aol.com*

*/s/ Robin M. Primeau*
Stephen B. Murray
Robin M. Primeau
MURRAY LAW FIRM
701 Poydras Street, Suite 4250
New Orleans, Louisiana 70139
Telephone: (504) 525-8100
Facsimile: (504) 584-5249
Email: smurray@murray-lawfirm.com
        rmyers@murray-lawfirm.com